Glenn L. **HOBSON**, Plaintiff,

v.

The **COASTAL CORPORATION** and **R. A. Sanders**, Defendants.

Civil Action No. 95–4167–DES.

United States District Court, D. Kansas.

April 15, 1997.

William L. Fry, William L. Fry & Associates, Wichita, KS, for Glenn L. Hobson.

Darrell L. Warta, Foulston & Siefkin L.L.P., Wichita, KS, for Coastal Corp., R. A. Sanders.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on defendants' Motion for Summary Judgment (Doc. 18). For the reasons set forth below, defendants' motion is denied.

## I. BACKGROUND

Mr. Hobson began working for American Petrofina, an oil refinery in El Dorado, Kansas, in 1967. American Petrofina later became Pester Refinery, for which Mr. Hobson continued to work until he was laid off in May of 1985. The Coastal Corporation ("Coastal") acquired Pester Refinery in early 1986. Coastal encouraged Mr. Hobson and other former Pester Refinery employees to apply for employment with Coastal. Mr. Hobson applied for work with Coastal but was not hired. Following Coastal's decision not to hire him, Mr. Hobson filed three administrative charges against Coastal with the National Labor Relations Board ("NLRB"). Mr. Hobson subsequently withdrew all three charges.

Sometime during the first half of 1991, Mr. Hobson applied for employment with Texaco Refining and Marketing, Inc. ("Texaco") but was not hired. Mr. Hobson believed he was not hired because of his age. He filed suit claiming age discrimination in the United States District Court for the District of Kansas.

In the course of discovery for that case, Mr. Hobson learned what he believes to be the actual reason behind Texaco's decision not to employ him. According to Mr. Hobson, Texaco did not hire him because of a defamatory statement made by defendant R.A. Sanders, Coastal's human resources director, in a telephone conversation to Michael Stroh, Jr., who was then Texaco's human resources director. The defamatory statement allegedly made by Mr. Sanders to Mr. Stroh in 1991 is as follows:

Mr. Hobson has filed numerous complaints against Coastal with the National Labor Relations Board and with the Equal Employment Opportunity Commission, and that each of the complaints had been dismissed as frivolous.

As a result of this statement, Mr. Hobson alleges that Mr. Stroh instructed Ward Heine, another manager with Texaco, not to hire Mr. Hobson.

The circumstances surrounding the telephone call between Mr. Sanders and Mr. Stroh are disputed. Mr. Hobson maintains that Mr. Sanders initiated the call to Mr. Stroh and that his comments were gratuitous. Defendants maintain that Mr. Stroh called Mr. Sanders requesting information regarding Coastal's decision not to hire Mr. Hobson. Defendants also maintain that the purpose of the conversation was for Coastal to learn whether Mr. Hobson had been hired by Texaco in order that Coastal might determine the extent of its damage exposure in the event Mr. Hobson prevailed in one of his administrative claims.

## II. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant

may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

### III. DISCUSSION

Defendants raise four arguments against plaintiff's defamation claim: (1) the claim is barred by the statute of limitations; (2) the statement attributed to Mr. Sanders is true and therefore not defamatory; (3) the statement is subject to a qualified privilege: and (4) the statement did not keep plaintiff from a job at Texaco.

■ Defendants first contend they are entitled to summary judgment because Mr. Hobson's claim is barred by the applicable statute of limitations. Both parties agree that Kan. Stat. Ann. 60–514(1) is the applicable statute of limitations. They disagree, however, about when the statute began to run. Plaintiff asks the court to apply the discovery rule to this case. In other words, plaintiff contends that the statutory period for bringing a defamation claim should not start until plaintiff discovered that the allegedly defamatory statement was made. Defendants claim that the discovery rule does not apply to defamation actions and that the limitations period commences on the date the statement was published.

Courts in this district have taken two approaches to the question of when the statutory period for bringing a defamation claim begins to run. The general rule, usually applied in media cases, is that the date of publication triggers the statute of limitations. *Rinsley v. Brandt,* 446 F.Supp. 850, 853 (D.Kan.1977). In the special case of defamation by credit reporting, however, a few courts have held that discovery of the publication triggers the statute of limitations. *McKown v. Dun & Bradstreet, Inc.,* 744 F.Supp. 1046, 1049 (D.Kan.1990). The reasoning behind this narrow exception is that publication of defamatory material in a credit reporting case is frequently not discovered until long after the statute of limitations had run. *See Rinsley v. Brandt,* 446 F.Supp. 850, 853 (D.Kan.1977); *Rickman v. Cone Mills Corp.,* 129 F.R.D. 181, 185 n. 5 (D.Kan. 1989) (Chief Judge O'Connor recognized that the discovery rule has been applied to "unusual defamation cases where the alleged defamation has been of a confidential or inherently secretive nature.").

The court finds this reasoning applicable to the present case and believes the Kansas

Supreme Court would adopt the discovery rule for the accrual of a cause of action for defamation based on defamatory oral statements concerning a plaintiff's employment history. Like a credit reporting case, publication of defamatory material in an employment history case is also likely to go undiscovered until long after the statute of limitations has run. The court also notes that the Kansas Court of Appeals has recently applied the discovery rule to slander of title, another cause of action where the alleged defamation is likely to be of a "confidential or inherently secretive nature." *See LaBarge v. City of Concordia*, 23 Kan. App.2d 8, 927 P.2d 487, 494 (1996) (holding "the statute of limitations began to run on the date the plaintiffs discovered that their title had been slandered.").

■ Defendants argue that even under the more liberal discovery rule, Mr. Hobson's defamation case is time barred. The court disagrees. The time at which Mr. Hobson discovered the allegedly defamatory statement is contested, and Mr. Hobson presents sufficient evidence for a reasonable factfinder to conclude he timely filed his complaint, thus presenting a genuine issue for trial.

■ Defendants next contend that the statement attributable to Mr. Sanders is true, and therefore not capable of being defamatory. The tort of defamation includes both libel and slander. *Batt v. Globe Engineering Co.*, 13 Kan.App.2d 500, 774 P.2d 371, *rev. denied*, 245 Kan. 782 (1989) (citation omitted). The elements of a defamation claim are: (1) false and defamatory words; (2) communication to a third party; and (3) resulting harm to the reputation of the person defamed. *Id.* It is the court's responsibility to make the initial determination that a statement is capable of conveying a defamatory meaning. *Woodmont Corp., v. Rockwood Center Partnership*, 811 F.Supp. 1478 (D.Kan.1993) (citing *Southern Air Transport, Inc. v. American Broadcasting Companies, Inc.*, 877 F.2d 1010, 1013–14 (D.C.Cir.1989)). In performing this function, the court must consider all the circumstances surrounding the communication. *See* Restatement (Second) Torts, § 614 cmt. a (1989). In this case, the court has little difficulty in finding that

Mr. Sanders' statement conveyed a defamatory meaning to Mr. Hobson's prospective employer. This does not mean, however, that the statement is necessarily actionable. To survive summary judgment, the plaintiff must also present sufficient evidence for a reasonable factfinder to find that the statement is false. Thus, the question remains whether defendants can rely on truth as a defense. *See Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106 (1986).

Defendants contend the statement in issue is true. According to defendants, not only did Mr. Hobson bring NLRB complaints against Coastal for not hiring him, but all three complaints were unsubstantiated as well. As evidence of their position, defendants point to "the total lack of action or response from the NLRB." Defendants also suggest that Mr. Hobson "confirmed as much by voluntarily abandoning them." Such unmeritorious complaints are reasonably labeled frivolous, according to defendants, by someone against whom the complaints were directed.

Plaintiff does not dispute that he filed several NLRB complaints against Coastal. He suggests, however, that defendants misconstrue the circumstances in attempt to make his claims appear frivolous. According to Mr. Hobson, the NLRB claims mentioned by the defendants were withdrawn, not dismissed, thus allowing him to re-open them at a later date. Mr. Hobson also points out that defendants failed to mention the NLRB claim he filed as a member of the Union Workmen's Committee. That claim, Mr. Hobson notes, was contested all the way to the Tenth Circuit. In light of the factual dispute regarding the merits of Mr. Hobson's NLRB claims, the court cannot find as a matter of law that defendants may rely on truth of the communication as a defense.

■ Defendants to a defamation claim may also assert privilege as an affirmative defense. *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106 (1986). A privilege may be absolute or qualified. *Id.* In this case, defendants assert a qualified privilege. "Whether a privilege is available in an action for defamation must be determined based on

the status of the particular defendant and the content of the alleged defamatory communication." *Id.* A qualified privilege exists where the communication (1) is made in good faith, (2) on a subject that the person communicating has an interest, (3) made to a person with a corresponding interest, and (4) made in a manner or under circumstances warranted by the occasion or interest. *Knudsen v. Kansas Gas & Electric Co.,* 248 Kan. 469, 480, 807 P.2d 71 (1991). An employer, for example, is qualifiedly privileged to discuss a former employee's employment history with other prospective employers. *See Turner,* 722 P.2d at 1112–13. The question of whether a publication is privileged is a question of law to be determined by the court. *Id.* at 1113 (citing *Munsell v. Ideal Food Stores,* 208 Kan. 909, 494 P.2d 1063 (1972)).

 The court has serious doubts about the application of the employment communications privilege to the facts of this case. Although Coastal is the purchaser and current operator of the Pester Refinery, it does not appear that Mr Sanders or his staff ever had any role in Mr. Hobson's former employment. While this does not mean that Mr. Sanders could not properly discuss Mr. Hobson's employment history based on records kept by Pester Refinery, such is not the case here. By defendants' own admission, the purpose of the call was to determine the extent of Coastal's potential liability if Mr. Hobson should somehow prevail in one of the NLRB administrative claims he filed against Coastal. Even disregarding that this admission is inconsistent with Coastal's position that Mr. Sanders initiated the telephone call, the court cannot find that the communication was made in good faith to a person with a corresponding interest in the subject of the communication. Accordingly, it would be improper for the court to conclude that publication of the statement in issue was privileged.

As a final argument, Coastal implies that Mr. Hobson suffered no harm as a result of the communication between Mr. Sanders and Mr. Stroh. Coastal contends that Mr. Hobson would not have been hired by Texaco regardless of any statement made by Mr. Sanders because more qualified individuals were available and those individuals did not exhibit "the contentious attitude evident when Mr. Hobson challenged Texaco policies in an abrasive manner" during his job interview. In response, Mr. Hobson points out that he scored higher on Texaco's pre-employment test than those candidates who were hired. He also points out that he had almost eighteen years of experience whereas many of those eventually hired lacked any experience in refining. This dispute is of a material fact and its resolution is properly reserved for trial.

**IT IS THEREFORE BY THE COURT ORDERED** that defendants' Motion for Summary Judgment (Doc. 18) is denied.